**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CHALMERS MANAGEMENT, INC. &
BROTHERS GAS & FOOD, INC.,

    Plaintiffs,

v.                                                                                  Case No. 13-11802

WESTERN HERITAGE INSURANCE
COMPANY,

    Defendant.
                                      /

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant Western Heritage Insurance Company moves for summary judgment on the claims for breach of contract and breach of statutory duties arising under Mich. Comp. Laws § 500.2006 asserted by Plaintiffs Chalmers Management, Inc. ("Chalmers") and Brothers Gas & Food, Inc. ("Brothers"). Defendant argues that the court should grant summary judgment because Plaintiffs have failed to make a sufficient showing of fact as to damages. The matter is fully briefed, and no hearing is needed. *See* E.D. Mich. LR 7.1(f)(2). For the reasons stated below, the court will grant Defendant's motion for summary judgment as to Plaintiffs' claims arising from loss of inventory, damage to Plaintiffs' gas pumps and sign, and loss of business income, and the court will deny the motion as to Defendants' claims for building damage and lost rent.

# I. BACKGROUND

## A. Factual Background

Chalmers operated a gas station and convenience store located at 11175 Chalmers, Detroit, Michigan 48213. Chalmers leased the property housing its business for $6,000 per month from Brothers, which operates an auto repair business on the same property. (Dkt. # 34-3, Pg. ID 677-78; Dkt. # 34-12, Pg. ID 710; Dkt. # 34-15, Pg. ID 758.) Plaintiffs allege that the gas station and convenience store suffered damages from a burglary on September 13, 2010 and a fire on November 13, 2010. (Dkt. # 34, Pg. ID 621.) During that time, Chalmers was covered by a commercial insurance policy (the "Policy") with Defendant, which listed Brothers as an additional insured. (Dkt. # 1-3, Pg. ID 20.) Plaintiffs filed a claim for damages arising from the burglary, and there are strong indications that a fire claim was made as well. (Dkt. # 21, Pg. ID 406.) Defendant denied Plaintiffs' burglary claim to the extent it was based on damage caused by theft. (Dkt. # 34-16, Pg. ID 791.) Defendant did not resolve Plaintiffs' claims arising from "[b]uilding damage caused by the breaking in or exiting of burglars" (Dkt. # 31-3, Pg. ID 554) and from the fire. (Dkt. # 21, Pg. ID 407.)

## B. Procedural Background

On March 7, 2013, Plaintiffs, along with purported plaintiffs Sakr Naji-Ahmed Said, Hadi Group Distributors Inc., and Hassan Harb, filed a complaint against Scottsdale Insurance Company ("Scottsdale") and Defendant in Wayne County Circuit Court asserting claims for breach of contract and breach of statutory duties arising under Mich. Comp. Laws §§ 500.2006, 500.2833(1)(p). (Dkt. # 1-2, Pg. ID 11-15.)

Defendant and Scottsdale removed the case to this court and moved for summary judgment. In a February 26, 2014 Opinion and Order, the court dismissed Scottsdale and the purported plaintiffs as parties, granted the motion for summary judgment as to Plaintiffs' theft loss claim and claim under Mich. Comp. Laws § 500.2833(1)(p), and denied the motion as to Plaintiffs' building damage and fire loss claims and their claim under Mich. Comp. Laws § 500.2006. (Dkt. # 21, Pg. ID 411.) Defendant filed the instant motion for summary judgment on August 8, 2014, contending that Plaintiffs have failed to provide any evidence of damages. (Dkt. # 31, Pg. ID 515.)

## II. STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). The movant has the initial burden of showing the absence of a genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]hat burden may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (internal quotation marks omitted).

The burden then shifts to the nonmovant, who must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citation omitted). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment—the disputed factual issue must be material. "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense." *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 776 (6th Cir. 2012) (citation omitted).

### III. DISCUSSION

Defendant argues that the court should grant its motion because "Plaintiffs lack any evidence of their damages[ and a]ll information that they have presented during discovery is purely speculative in nature and does not satisfy their burden of proof." (Dkt. # 31, Pg. ID 521.) As discussed below, Plaintiffs have submitted sufficient evidence for a trier of fact to determine building damages and lost rent. However, Plaintiffs have not presented evidence sufficient for a trier of fact to determine damages resulting from loss of inventory caused by the fire and loss of business income, and Defendant is not liable, as a matter of law, for loss of inventory resulting from the burglary or damage to the gas pumps and sign caused by theft.

### A. Inventory Damage

First, Defendant argues that Plaintiffs have failed to make an adequate showing of damage to their inventory. (*Id.* at 516-17.) Plaintiffs put forth no estimate of the inventory damage caused by the November 13, 2010 fire, but contend that there is sufficient evidence on the record for a reasonable trier of fact to assess inventory damages resulting from vandalism during the September 13, 2010 burglary. (Dkt. # 34, Pg. ID 624-25.) Plaintiffs assert that "it does not matter what inventory was in the store

4

at the time of the fire; regardless of the fire, there is still evidence of vandalism damages . . . ." (*Id.* at 627.) Thus, Plaintiffs have provided no evidence on which a trier of fact could determine the quantity or value of goods destroyed by the fire, alone.

As for the inventory destroyed by the burglary, Plaintiffs point to Defendant's internal records which state that, following the September 13, 2010 burglary, "[a] salvage co[mpany was] retained to do the inventory of the remaining [business personal property] to determine the [business personal property] loss for [vandalism and malicious mischief]. (Dkt. # 34-14, Pg. ID 742.) The salvage company reported that there was "no salvage potential for any remaining stock" and estimated the "retail value of the remaining stock [to be] $29,324.22 [with actual] cost of goods totaling $18,237.87." (*Id.* at 743.)

Contrary to Plaintiff's assertion, inventory damage due to vandalism during a burglary is not covered by the Policy. The Policy includes a "Theft Exclusion," which provides:

> We will not pay for loss or damage caused by or resulting from theft. But we will pay for:
>
> 1. Loss or damage that occurs due to looting at the time and place of a riot or civil commotion; or
>
> 2. Building damage caused by the breaking in or exiting of burglars.
>
> And if theft results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.[1]

---

[1] The Plan does not define "Covered Causes of Loss," but instead directs the reader to "the applicable Causes of Loss Form." (Dkt. # 15-2, Pg. ID 233.) The only Causes of Loss Form attached to the Plan is the "Causes of Loss–Special Form," which provides: "When Special is shown in the Declarations, Covered Causes of Loss means Risks of Direct Physical unless the loss is: (1) Excluded in Section B., Exclusions; or (2)

(Dkt. # 31-3, Pg. ID 554.)

The damage caused to Plaintiffs inventory during the burglary was "caused by or resulting from theft." (*Id.*) Such damage does not fall within either of the Theft Exclusion's exceptions. The first exception applies only to damage caused during riots or civil commotion, and the second exception, which does apply to burglaries, excepts only building damage, not inventory damage. Therefore, as a matter of law, Defendant is not liable for damage to inventory resulting from the September 13, 2010 burglary.

### B. Building Damage

Plaintiffs submitted three estimates prepared by third parties assessing damage to the building following the alleged November 13, 2010 fire. It is unclear from the reports whether any of the estimated damage resulted from the burglary instead of from the fire. However, because the Theft Exclusion excepts building damage, the court need not determine at this time whether any of the estimated building damage resulted from the burglary. (Dkt. # 31-3, Pg. ID 554.)

---

Limited in Section C., Limitations . . . ." (*Id.* at 258.) The Theft Exclusion is an addendum to the Exclusions referenced in the Special Form. While the last sentence of the Theft Exclusion is therefore somewhat circular, its plain meaning can be ascertained. *Weiss v. St. Paul Fire & Marine Ins. Co.*, 283 F.3d 790 (6th Cir. 2002) (using traditional methods of contract interpretation to determine the plain meaning of an insurance contract). The last sentence provides that Covered Causes of Loss which are not otherwise excluded by the Theft Exclusion or other exclusions or limitations will be paid by Defendant. Any other reading of this provision would conflict with the remainder of the Theft Exclusion which unambiguously excludes all damage resulting from theft that does not fall within the two enumerated exceptions. *Sparks v. Inter'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am., UAW*, 99 F.3d 1140, at *3 (Aug. 26, 1996) (unpublished disposition) ("A contract should not be construed in a manner that renders an explicit provision meaningless when another reading harmonizes the entire instrument.").

The first estimate was prepared by Crawford & Company, an independent adjustment firm retained by Defendant. (Dkt. # 34-16, Pg. ID 791.) The report, based on a December 2, 2010 inspection of the building, estimates a replacement cost value of $60,748.23, actual cash value of $40,592.88, and a net claim of $38,092.88 based on damage to the building. (Dkt. # 34-17, Pg. ID 793, 804.) The second estimate was prepared by Maya Construction and is dated November 25, 2010. (Dkt. # 34-19, Pg. ID 831.) Maya Construction estimates the damage caused to the entire building located at 11175 Chalmers, Detroit, Michigan 48213—including the part of the building occupied by Brother's auto repair business—to be $339,177.50. (*Id.*) Third, Plaintiffs submitted an estimate prepared by Aaron Builders, Inc., at the request of Defendant, which calculated $61,122.48 in replacement value at the property. (Dkt. # 34-18, Pg. ID 821.) Defendant does not address the estimates in its summary judgment papers. These estimates provide a sufficient basis for a trier of fact to determine building damages resulting from the burglary and fire.

### C. Gas Pumps and Sign Damage

Defendant asserts that it is not liable to Plaintiffs for damage caused to Plaintiffs' gas pumps and business sign because "the damage to these items was caused by people 'stealing' parts out of them." (Dkt. # 31, Pg. ID 518.) Plaintiffs concede that the pumps and sign were damaged because people had been stealing parts out of the pumps and sign. (Dkt. # 34, Pg. ID 630.) But Plaintiffs argue that "the act of stealing parts out of both the pumps and sign, so as to make them unusuable, is an act of vandalism *not* theft." (*Id.*) Therefore, according to Plaintiffs, the damage to the pumps and sign are not covered by the Theft Exclusion.

7

Vandalism and theft are not mutually exclusive. Whether or not stealing parts out of the pumps and sign is vandalism, it is certainly theft. *See* Webster's Third New International Dictionary 2369 (1981) (defining "theft" as "the act of stealing"). As discussed above, the Theft Exclusion does not include a general exception for all vandalism; instead, the Theft Exclusion excepts only "[b]uilding damage caused by the breaking in or exiting of burglars." (Dkt. # 31-3, Pg. ID 554.) Accordingly, because it is undisputed that the damage to the pumps and sign resulted from the act of stealing, Defendant is not liable for it.

### D. Loss of Rent

Third, Defendant argues that it is not liable to Brothers for lost rent because no rent became due following the burglary and fire. (Dkt. # 31, Pg. ID 517-18.) The Policy lists Brothers as an "[a]dditional [i]nsured" and states that Brothers is insured "with respect to liability arising out of the ownership, maintenance or use of the part of the premises leased to [Chalmers]." (Dkt. # 1-3, Pg. ID 22.) Defendant does not argue in its summary judgment papers that it would not be liable for rent that became due during the period that Chalmers could not occupy the property as a result of the burglary or fire. Rather, Defendant argues that no rent became due during this period because, under the terms of the Chalmer's and Brothers' Lease Agreement, Chalmers is not liable for payment of rent in the event of a fire or other destruction. (*Id.*)

The Lease Agreement provides, in relevant parts:

In the event the Leased Premise shall be damaged or destroyed by fire or other casualty, the Landlord shall have the right to terminate this Lease, provided it gives written notice thereof to the Tenant within ninety (90) days after such damage or destruction. If a portion of the leased Premise is damaged by fire or other casualty and this Lease is not terminated the

> Landlord shall, to the extent of available insurance proceeds, restore the Leased Premise to as near conditions which existed immediately prior to such damage or destruction as reasonably possible, and rent shall abate during such period of time as the Leased Premise are untenantable in the proportion that the untenable proportion bears to the entire Leased Premise.

(Dkt. # 34-12, Pg. ID 717.)

Plaintiffs contend that Brothers did not terminate the lease with Chalmers and that "rent *only* abates if *only a portion* of the leased premises are untenantable due to damage by fire or other event." (Dkt. # 34, Pg. ID 628 (emphasis in original).) Plaintiffs argue that, because the entire leased premises were untentantable, Chalmers still owes rent to Brothers and, "since [Chalmers] is still liable for rent under the Lease Agreement, so to is Defendant." (*Id.*)

The court need not decide whether Chalmers' rent abates when all of the premises are untenantable. Whether or not Chalmers' rent abated following the burglary or fire, there is sufficient evidence to find that Brothers suffered damages as a result of lost rent from Chalmers.

### E. Lost Business Income

Last, Plaintiffs seek damages for loss of business income on the ground that Chalmers could not continue business operations "due to Defendant's refusal to pay the vandalism claim promptly." (Dkt. # 34, Pg. ID 616.) *See Am. Anodco, Inc. v. Reynolds Metals Co.*, 743 F.2d 417, 423 (6th Cir. 1984) ("[L]oss of future profits is permitted as an element of damages in breach of contract actions when they can be established with reasonable certainty."); *see also Auto Indus. Supplier Emp. Stock Ownership Plan v. Ford Motor Co.*, 435 F. App'x 430, 459 (6th Cir. July 1, 2011). Defendants argue that expert testimony on which Plaintiffs base their damages for lost business income should

9

be disregarded because the witness was not previously disclosed to Defendant and because the expert relied exclusively on speculative evidence in calculating his estimate. (Dkt. # 35, Pg. ID 840-42.) The court agrees that the expert testimony should be disregarded because Plaintiffs failed to abide by the expert witness disclosure requirements set forth in the court's March 4, 2014 Scheduling Order. (Dkt. # 22, Pg. ID 413-14.) The court, therefore, does not consider whether the expert's testimony was based on exclusively speculative evidence.

To establish loss of business income damages, Plaintiffs submitted the affidavit of Certified Public Accountant Steven R. Chapski to with their summary judgment papers. (*See generally* Dkt. # 34-21, Pg. ID 836.) After reviewing documents related to this case, Chapski calculated Chalmers' lost profit to be $80,000 as of September 12, 2014, or $20,000 in lost profits per year since the burglary. (Dkt. # 34-21, Pg. ID 837.)

Pursuant to the court's March 4, 2014 Scheduling Order, each party was required to deliver a preliminary witness list to the opposing party and to file a copy with the court on or before March 18, 2014, and each party was required to deliver and file their final witness list on or before June 18, 2014. (Dkt. # 22, Pg. ID 414.) The Order also required Plaintiffs to provide opposing counsel with the report of any proposed expert witnesses not later than fifty-six days before the Discovery Deadline of July 1, 2014 as the Discovery Deadline. (*Id.* at Pg. ID 413-14.)

Plaintiffs did not file any witness lists with the court, and Defendant claims that Plaintiffs did not provide it with an expert report. (Dkt. # 35, Pg. ID 841.) Courts have wide discretion in enforcement of the deadlines set forth in their scheduling orders. *See Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003); *see also Sexton v. Uniroyal*

*Chemical Co., Inc.* 62 F. App'x 615, 617 (6th Cir. 2003) (affirming a district courts order for failure to prosecute and to comply with the court's order governing expert testimony disclosures). Under Rule 16(b)(4) of the Federal Rules of Civil Procedure, "[a] schedule may be modified only for good cause and with the judge's consent." "[A] court choosing to modify the schedule upon a showing of good cause[] may do so only 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Leary*, 349 F.3d at 906 (quoting Fed. R. Civ. P. 16, 1983 advisory committee's notes). Furthermore, the Scheduling Order warned Plaintiffs, "The court seldom extends, but may shorten, the deadlines established in this Order . . . ." (Dkt. # 22, Pg. ID 412.) Yet, as of the filing of their Answer to Defendant's Motion for Summary Judgment, over four months after Plaintiffs' deadline for providing opposing counsel with proposed expert witness reports, Plaintiffs had not sought any extensions to the schedule, nor had they offered any justification for their failure to file any witness lists or disclose any expert reports to Defendant.

      Pursuant to the rules and expectations set forth in the Scheduling Order, the court finds that the deadline for disclosing witnesses has passed and, therefore, Plaintiffs may not rely on Chapski's testimony to support their claim for damages. Plaintiffs rely on no other evidence to support their claim for loss of business income damages. As such, Plaintiffs have failed, as a matter of law, to make an adequate showing of such damages.

### IV. CONCLUSION

      For the reasons stated above, IT IS ORDERED that Defendants' motion for summary judgment (Dkt. # 31) is DENIED IN PART and GRANTED IN PART. The

motion is GRANTED in that Defendant is entitled to summary judgment on Plaintiffs' claims resulting from inventory loss, damage to Plaintiffs' gas pumps and sign, and lost business income. The motion is DENIED as to Plaintiffs' claims resulting from building damage and lost rent.

        s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: March 3, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 5, 2015, by electronic and/or ordinary mail.

        s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522